Irving **DULCY**

v.

**UNITED STATES.**

No. 411–58.

United States Court of Claims.
March 2, 1960.

**688**

Joseph Minsky, Chicago, Ill., for plaintiff.

Sheldon J. Wolfe, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

PER CURIAM.

Plaintiff, a veteran preference eligible, seeks to recover pay from May 7, 1956, the date on which he was separated by the Government Printing Office.

■ Initially plaintiff filed a motion for judgment on the pleadings, alleging that his veteran's preference rights granted him by section 14 of the Veterans' Preference Act of 1944, 58 Stat. 390, 5 U.S.C.A. § 863, as amended, were violated. After filing of opposition by the defendant and after motion for summary judgment by the defendant, plaintiff on September 15, 1959, filed a supplemental pleading to which he has attached exhibits. Accordingly, we will now treat plaintiff's pleading as a motion for summary judgment.

The allegations of the petition, answer, motions, and exhibits are voluminous and nothing can be gained from a long summary of facts. Facts necessary to a conclusion will be set forth later in the body of the opinion.

Plaintiff complains of many things; *i.e.*, that the agency was arbitrary and erred in dismissing plaintiff and the Civil Service Commission was in error and arbitrary in upholding said dismissal; that the President's Committee on Government Employment Policy violated its regulations and was arbitrary in its hearings and opinion.

■ Section 14 provides in pertinent part that a veteran preference eligible shall not be discharged except for such cause as will promote the efficiency of the service and for reasons given in writing with at least 30 days' advance written notice stating any and all reasons specif-

ically and in detail for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing evidence in support of such answer, and shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting.

The facts relative to the agency action in dismissing plaintiff are these: After considerable discussion, letter writing, charges and countercharges, relative to proposed action to reassign, plaintiff wrote to the Director of Personnel, Government Printing Office, alleging that a deplorable situation in working conditions prevailed in the Chicago office. An investigation followed and finally a 3-man grievance committee from the Washington office heard testimony relative thereto. On March 14, 1956, the committee submitted its report and recommendations to the Public Printer. The committee stated:

"After a thorough study of the testimony the committee has come to the following conclusions and makes the following recommendations:

"1. Mr. Irving Dulcy by letter of February 6, 1956, to the Director of Personnel made serious charges against the Chicago Field Office Manager regarding conditions prevailing in the plant. Testimony was taken from him under oath and he did not substantiate his charges. It is recommended that charges be preferred proposing his separation or other corrective action for violation of Item 20, 'Falsehood—Intentional misstatement or concealment of material fact in connection with work, employment, or in any record, report, investigation, or other proceeding,' Administrative Order No. 71, Supplements No. 1 and No. 3, amended August 31, 1953. Charges to include violation of Item 21, 'Insubordination—Intentional disobedience; assaulting or resisting authority; disrespect; or use of insulting or abusive language,' on the basis of matters mentioned in warning letter to Mr. Dulcy from the Field Service Office Manager, dated January 16, 1956.

\* \* \* \* \* \*

(It is the opinion of the Committee, after careful consideration of all statements made that the charges made by Mr. Dulcy and Miss Pellegrini are unfounded, the result of hearsay, gossip, and their own imagination. Also, that many of the accusations refer to the normal operation and supervision of the plant. In many cases the persons making the charges have accused other people as a defense against their shortcomings.)"

Thereafter on April 3, 1956, notice of proposed adverse action was sent to plaintiff. Said notice stated that plaintiff's separation or other corrective action was proposed to promote the efficiency of the service for violation of Items 20 and 21 of Administrative Order No. 71, Supplements 1 and 3, amended August 31, 1953. Items 20 and 21 are as follows:

"20. Falsehood—Intentional misstatement or concealment of material fact in connection with work, employment, or in any record, report, investigation, or other proceeding.

"21. Insubordination—Intentional disobedience; assaulting or resisting authority; disrespect, or use of insulting or abusive language."

On April 25, 1956, the investigating committee recommended to the Public Printer that in order to promote the efficiency of the service that plaintiff be separated for having violated Items 20 and 21. The recommendation was based on three specific matters as follows:

"(1) That Mr. Dulcy used insulting and abusive language to his immediate supervisor, the Plant Superintendent, in the presence of the Field Service Office Manager by telling him in an insubordinate manner that he was lying.

"(2) Mr. Dulcy also told the Plant Superintendent when they were both returning to the plant from a meeting in the Manager's office that he was lying when he denied having reviewed the contents of Mr. Dulcy's personnel folder. (Item 21)

"(3) That Mr. Dulcy stated to one of the Bindery Women that the Plant Superintendent had told him to 'work the hell out of her' because of the fact that she failed to keep a motel date with him, a (malicious) falsehood against the Plant Superintendent. (Item 20)"

On May 7, 1956 plaintiff was separated.

It is quite apparent that all section 14 procedures were followed. Plaintiff was given a 30-day advance written notice which stated specifically the reasons for the proposed action. He answered the charge by letter and by submission of statements from two people. Plaintiff appealed the adverse action to the Civil Service Commission, which is discussed later.

The record conclusively shows that plaintiff actually violated Items 20 and 21 of the Administrative Order and it is for the agency to determine what action to take. Only the agency heads could know whether the offense was sufficiently grave to warrant dismissal. After what we believe to have been a full and fair investigation, the agency concluded that separation would promote the efficiency of the service. This was not only the right but the duty of the agency. Under these circumstances, we can find nothing arbitrary in the agency action. As is discussed later, the Civil Service Commission, after careful consideration, arrived at the same conclusion.

Plaintiff then charges that the Seventh Region was arbitrary in upholding the agency.

Accordingly, after considering all the evidence before it, the Seventh Region, finding no procedural error, sustained the agency action.[1]

The courts have consistently held under such circumstances that where there has been compliance with procedural requirements, they will not review the merits of a dismissal action. Eberlein v. United States, 257 U.S. 82, 42 S.Ct. 12, 66 L.Ed. 140; Keim v. United States, 177 U.S. 290, 20 S.Ct. 574, 44 L.Ed. 774; Jordan v. United States, 158 F.Supp. 715, 138 Ct.Cl. 647; Vaughn v. United States, 158 F.Supp. 716, 141 Ct.Cl. 208.

Plaintiff on July 12, 1956, appealed the decision to the Board of Appeals and Review. Later, on July 17, 1956, plaintiff submitted a memorandum relative to said appeal wherein he alleged, among other things, that the Seventh Region erred in refusing to permit the introduction of evidence relative to reasons why the two Government employees left the service. The memorandum included the statement "Mr. Dulcy is the last person of the Jewish faith who was employed in the Chicago field service office to be severed from his employment." (In respect to the last quote, we can find nothing significant one way or the other even if the truth of the statement be conceded.) The memorandum then requested a hearing by the President's Committee on Government Employment Policy under Executive Order No. 10590.

Eventually, on November 21, 1956, the Board of Appeals and Review affirmed the action of the Seventh Region. While not specifically mentioning the religious aspect, the Board found the "reasons for his separation * * * are substantiated by the preponderance of the evidence." The reason why no mention was made of religious discrimination, we suppose, is that no clear issue as to such was ever presented. Clearly the Seventh Region was correct in ruling the offered evidence was immaterial and nothing further was presented. Consequently the Board of Appeals and Review in respect to this issue was only called upon to decide the alleged error in refusing to hear the evidence. This it did in effect by sustaining the action below. As stat-

1. No procedural error was alleged or present.

ed previously, nothing significant is presented by the statement respecting the last person of Jewish faith who was separated from employment, and no answer by the Board of Appeals and Review was compelled.

On the other questions involved, the Board merely affirmed and we can find nothing arbitrary in this action. Furthermore, as stated earlier, absent procedural error the courts will not review the merits of a dismissal.

■ Since the agency action in separating plaintiff was the subject of plaintiff's appeals, and since the court has held that the action of the Civil Service Commission was not arbitrary, the remaining issue to be decided is whether any procedural error was committed by the Committee on Government Employment Policy, and whether the advisory opinion of the Committee was based upon substantial evidence.

The President's Committee on Government Employment Policy was established under Executive Order No. 10590. The Committee is composed of five members as follows: one representative of the Civil Service Commission, to be designated by the Chairman thereof; one representative of the Department of Labor, to be designated by the Secretary of Labor; one representative of the Office of Defense Mobilization, to be designated by the Director thereof; and two public members, to be appointed by the President. Its function is to inquire into and inform the President as to whether the civilian employment practices in the Federal Government are in conformity with the policy of the United States Government that equal opportunity be afforded all qualified persons, consistent with the law, for employment in the Federal Government without discrimination against any employee because of race, color, religion or national origin. The Committee is further empowered to receive and investigate complaints of alleged discrimination and to make recommendations to appropriate administrative officials for such corrective measures as it may deem necessary. Certain

regulations and procedures were adopted and promulgated pursuant thereto.

Plaintiff argues that the conduct of the hearings pursuant to the Executive Order and Administrative Order thereunder was arbitrary, biased, and prejudiced. In this respect plaintiff makes many charges and allegations of bias and prejudice. However, the record shows the Committee held extensive hearings and prepared exhaustive findings of fact and conclusions.

The very fact that the Committee was originated to protect the employee and consisted of members selected by reason of either their high Government positions or because they were persons who held the confidence of the President of the United States, who served without pay, should alone be persuasive of the lack of prejudice on their part. We have no doubts as to their honesty and integrity and fair consideration of all cases referred to them. We believe from a review of the record that plaintiff received the utmost in fair treatment and consideration of his problems. The Committee heard witnesses, judged their demeanor and credibility and made findings. Consequently, on this point, we hold that the record does not disclose any arbitrary action on the part of the Committee.

■ Plaintiff next complains of a violation of the regulations of the Committee; i. e., that a summary of testimony was not prepared and agreed to by the interested parties. True, the regulations so provided. However, it was plaintiff who refused to agree as shown by his statement of objections. Thus when a summary was prepared and forwarded to plaintiff, this constituted substantial compliance with the regulations.

■ Plaintiff then contends that he was not sent a copy of the Committee's advisory opinion. A short answer to this contention is that it was sent to him and he now admits he received it but complains he got it from the Government Printing Office, not the Committee. We think the important issue is whether

plaintiff received the same and not where it came from. Again we hold this was substantial compliance with the regulations.

In conclusion we find no procedural error or arbitrary action in plaintiff's reassignment. There was no procedural error or arbitrary action in separating plaintiff. There was no procedural error or arbitrary action on the part of either the Seventh Region in affirming the agency action or the Board of Appeals and Review in sustaining the action of the Seventh Region. The procedures followed by the President's Committee were in substantial compliance with the regulations. Finally, the record fails to disclose any arbitrary action on the part of the President's Committee in its hearing and determination.

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

It is so ordered.