Laramore, Judge,
delivered the opinion of the court:
Plaintiff, a veteran preference eligible, sues for back pay from November 25, 1957, when he was separated from his position in the U.S. Post Office, allegedly in violation of his rights under the Veterans’ Preference Act of 1944, 58 Stat. 390. He does not question the procedures invoked, but alleges the separation action was arbitrary and capricious. More particularly, he alleges “Plaintiff’s dismissal for failure to violate the instructions of the V.A., P.O., and other doctors and seriously prejudice his health, pending action on his appeal to the Postmaster General, was arbitrary, capricious, unreasonable, and so grossly erroneous as to imply bad faith, and not for such cause as would promote the efficiency of the service.”
Since plaintiff has accepted and relied on the statement of facts contained in defendant’s brief, the court also accepts the same. The facts as disclosed by the defendant’s brief are as follows:
Plaintiff, a veteran preference eligible with a 10 percent disability rating, was employed in the New York City Post Office. From August 17, 1952, to June 1,1957, his position was that of a substitute mail handler, and on June 1, 1957, plaintiff was appointed as a regular mail handler. Prior to the latter appointment, plaintiff was assigned to the day tour upon the medical advice of the Veterans Administration that night work would cause a complete nervous breakdown. Upon being appointed as a regular mail handler on June 1, *30 1957, be was assigned to the night tour despite the advice of Veterans Administration doctors, Post Office doctors, and plaintiff’s personal physician.
On September 14,1957, plaintiff failed to report for duty after his leave of absence had expired on September 13. By letter dated September 17, 1957, plaintiff was directed to report for duty at once or be subject to disciplinary action. On September 14, plaintiff appealed to the Postmaster Gen- ■ eral concerning his assignment to night duty but received no answer. Subsequently, plaintiff’s father wrote to the Postmaster General on September 28, requesting that his son be permitted to work days, and averring that upon being appointed as a regular mail handler, plaintiff had been assigned night duty, that plaintiff refused to work nights upon doctors’ advice that it would be detrimental to his health, and that Post Office officials refused to assign plaintiff to a day tour because of seniority considerations.
Again, by a letter of caution dated September 25,1957, the Superintendent of Grand Central Station, United States Post Office, directed plaintiff to return to duty immediately, or to furnish satisfactory evidence of the reason for his absence, and to comply with the above orders or be subject to disciplinary action. On the back of this letter, plaintiff answered that he had written to the Superintendent previ-ousy requesting assignment to the day tour because of a nervous condition, that the Post Office had already received medical statements from his doctors and that no further correspondence was necessary.
On October 4,1957, plaintiff was sent a notice of proposed adverse action setting forth the following charges:
Charge No. 1 — Failure to comply with instructions governing absence.
You were absent from duty on the 8:00 a.m. tour, January 12, 1957, Although in answer to Forms 3991 you stated that you were ill, you failed to comply with instructions governing absence as no advice was received from you.
Charge No. 2 — Continuous absence without leave. _
_ You have been continuously absent from duty without leave since September 14,1957. You were granted a leave of absence from August 6 to September 13,1957, inclusive.
*31 On September 17,1957, an official communication was sent to yonr address of record by registered mail, endorsed Deliver to Addressee Only, notifying that your leave of absence expired on September 13, 1957, and directing you to report for duty at once.
On September 24,1957, at 4:00 p.m., your absence was investigated by General Foreman Nicholas DiSarie, who stated that after repeatedly ringing of your bell received no answer.
On September 25, 1957, a letter of caution was sent to your address of record by registered mail, endorsed for personal delivery only, reiterating the above facts and directing you to return to duty immediately or submit satisfactory evidence of the reason for your absence.
You replied to this letter on September 28,1957, stating that you had submitted a letter to your superintendent explaining the reason why you must work days. You further stated that there are two letters from your physician and a letter from the Veterans Administration doctor listing your illness. You also declared that you cannot work nights because of a severe service-connected nervous condition.
No further advice has been received from you, nor have you returned to duty.
* * * * *
On October 8, 1957, plaintiff replied denying that he had failed to comply with instructions governing absences in that he had submitted a doctor’s certificate for the January 12, 1957, absence. He also denied that he had been absent without leave since September 14,1957, in that he had submitted a form for leave accompanied by a certificate from his doctor dated on or about September 13,1957.
Eesponding to plaintiff’s father’s letter of September 28, the Eegional Director in Charge of the Post Office advised on October 9, that:
Assignments to tours are effected on a seniority basis and in accordance with seniority regulations in effect at this office.
It is regretted that your request cannot be granted, as to do so, would infringe on the rights of senior employees.
Thereafter, by letter dated November 15, 1957, the Post Office informed plaintiff that the two charges had been sustained and that he was to be separated on November 25.
*32 On December 3,1957, plaintiff appealed to the Civil Service Commission. In an affidavit to the Civil Service Commission dated December 16, 1957, Mr. Martin Albert, Regional Operations Manager of the Post Office, deposed that Charge No. 1 had been sustained because Mr. Rubin had failed to comply with a regulation contained in a Post Office booklet entitled “Your Job In The New York Post Office,” which required that all employees telephone within one-half hour after scheduled reporting time if they have to be absent because of illness, and that Charge No. 2 had been sustained because plaintiff had failed to comply with a Civil Service Commission regulation, 5 CFR 30.403, which required that a grant of sick leave in excess of three work days must be supported by a medical certificate.
At the Civil Service Commission Regional Office hearing held on January 14, 1958, three documents offered by defendant were admitted into evidence: a citation captioned “Report of Tardiness, Errors, Or Misconduct”, dated January 17, 1957; plaintiff’s reply written on the reverse side of the citation, dated January 28,1957; a personnel form dated January 29, 1957, indicating that plaintiff had neither telephoned nor written to the Post Office that he would not report for duty on January 12,1957.
Thereafter, on January 21,1958, the Second United States Civil Service Regional Office affirmed the separation action finding that:
*****
The Department’s record establishes that no call was received from the appellant and neither in his answer to the citation issued for this infraction nor in his reply dated October 8, did he contend that any call had been made, as required. Concerning Charge 2, Section 30.403 of the Federal Personnel Manual provides, in part, that any grant of sick leave in excess of three workdays, must be supported by a medical certificate, or other evidence administratively acceptable. The evidence establishes that such requirement was contained in a bulletin issued to all employees, and that the appellant failed to submit any evidence to the Department subsequent to September 13 and only referred in his letter of September 28 to previous medical certificates given to the Department. Under the circumstances, it is considered that the appellant’s absence *33 beginning on September 14,1957, was not properly supported, as required, and that the Department properly considered such, absence to be without official leave.
* ❖ * # *
It is the finding of this office that the Department complied with all of the procedural requirements of the law and the regulations in effecting the appellant’s removal; that the Department’s action, based on the sustained charges and his prior record, is considered to be for such cause as will promote the efficiency of the service; and that the Department’s action in separating the appellant is sustained.
Plaintiff appealed to the Civil Service Commission Board of Appeals and Review on January 23,1958, and on April 4, 1958, the aforesaid Board affirmed the decision of the Regional Office. On April 23, 1958, plaintiff appealed to the Commissioners of the Civil Service Commission, and on August 18, the Commissioners affirmed the removal action. Plaintiff’s petition contains no allegation of arbitrary action on the part of the Civil Service Commission. Absent such an allegation the court will not set aside the Civil Service Commission’s decision. However, if such an allegation had been made, for reasons stated following, the conclusion is inescapable that not only the Civil Service Commission decision but all other action in plaintiff’s removal was not arbitrary, capricious or unreasonable.
On September 5, 1958, plaintiff filed a petition in this court.
Under these circumstances it is for this court to determine (1) whether plaintiff failed to comply with instructions governing absence; (2) whether plaintiff was continuously absent without leave and, if so, was the agency action arbitrary and capricious and in violation of section 14 of the Veterans’ Preference Act, supra, when it separated him.
Section 14 of the Veterans’ Preference Act, supra, provides in pertinent part:
No permanent or indefinite preference eligible, who has completed a probationary or trial period employed in the civil service, * * * shall be discharged, * * * except for such cause as will promote the efficiency of the service * * *.
*34 The U.S.. Post Office booklet entitled “Your Job in the New York Post Office” provides:
How Do I Apply poR Sick Leave i
If you have to absent because of illness, you or someone in your behalf, must telephone your station not later than your scheduled reporting time, nor earlier than two hours in advance of your starting time. If it becomes necessary to leave your home for any reason, leave word where you may be contacted.
‡ ‡ ‡ ‡
For every absence on sick leave in excess of 3 days you must submit a medical certificate attesting to your illness.
Beyond question, plaintiff did not telephone his station at or before his starting time, and obviously did not comply with the instructions contained in the booklet above referred to. On the other hand, plaintiff testified at a hearing before the Civil Service Regional Office in New York that he telephoned his office within an hour or an hour and a half after he was due to report for duty.
Whether this violation was enough to cause plaintiff’s dismissal we need not determine inasmuch as there was a second and more serious charge; i.e., that plaintiff was continuously absent from duty without leave.
Civil Service Regulation, 5 CFR 30.403 (1956 Supp.) provides:
Supporting evidence. Any grant of sick leave in excess of 3 work days must be supported by a medical certificate, or other evidence administratively acceptable. For periods of absence of 3 work days or less the agency may accept the employee’s certification as to the reason for the absence.
Plaintiff replies that he is and was vocationally handicapped and suffering from serious disability incurred as a result of active duty in World War II while serving in the Army; that the Post Office officials knew at the time he was promoted from temporary mail handler to a regular mail carrier that he had a disability which would not permit him to work nights. He further says that because of this knowledge he was permitted, prior to his promotion, to work a day *35 shift and was led to believe day work would be provided after his promotion. Plaintiff further says that when he learned he was assigned a night shift he protested and was advised to obtain medical certificates as to the state of his health and to report to the Post Office physician for examination.
The record shows plaintiff submitted a letter from his personal physician which indicated that night work would react unfavorably in his type of case. The record further shows that plaintiff was examined by the Post Office physician, who recommended that his request for a day tour was justified for 30 days. Approximately one month later a similar recommendation was made by the Post Office physician.
On July 19, 1957, a second letter to the Post Office was sent by plaintiff’s personal physician repeating his recommendation that his patient be limited to day work. Also, on August 5, 1957, Dr. Casesa of the Veterans Administration, New York, wrote the Post Office stating that in his opinion night work may be detrimental to plaintiff’s nervous condition.
Later, at the suggestion of Mr. Meyers, superintendent of the Grand Central Branch Post Office, plaintiff submitted a leave of absence form together with a doctor’s certificate and was granted leave of absence from August 6,1957, to September 13, 1957. Leave without pay was apparently granted plaintiff and during this period plaintiff wrote Mr. Meyers requesting a day tour.
Upon expiration of his leave without pay plaintiff did not return to duty at the Post Office because, as he says, he was instructed to report for duty on the 6:00 P.M. to 2:00 A.M. tour or not to come to work at all. He then says to report for said night duty would have been injurious to his health, and the only reasonable course to pursue was to remain at home. It was after the period of his leave without pay that plaintiff was sent notice of proposed adverse action, which resulted in the alleged arbitrary and capricious action of plaintiff’s separation.
On the other side of the coin, as early as August 17,1952, when plaintiff had been appointed a career substitute mail *36 handler, he was advised that regular positions would be attainable based upon seniority and rating considerations. Thus, once plaintiff was appointed as a regular mail handler, he was subject to the rules and regulations regarding assignment. The regulations respecting assignment as provided in the Post Office Manual are as follows:
714.332. Filling Nonsupervisory Vacancies by Assignment
a. Definitions
For definitions of installation, occupational group, bid, assignment, designation, etc., see 748.212.
b. Posting
(1) Assignments That Must Be Posted. When a nonsupervisory assignment which is considered a preferred assignment in levels PFS-1 through PFS-6 is open in any branch of the Postal Service, it shall be posted. See 748.16 for procedures governing bidding for assignments in the postal transportation service.
(2) Time for Posting. A notice shall be posted for the information of employees eligible to submit bids sufficiently in advance to allow for required posting time and proper selection.
$ * $ 4: *
c. Employees Eligible to Submit A Bid
All employees who are in the particular branch of the postal service, are in the same PFS salary level, the same occupational group (748.212), and the same installation where the vacant assignment exists, are eligible to submit a bid.
d. Selection
(1) The senior qualified employee in the occupational group who bids for the assignment shall be placed in the vacant assignment.
(2) The responsible postal official, at the request of a senior Didder who is not selected for an assignment, shall inform the bidder, in writing, why he is not qualified for the assignment.
(3) When filling a’city carrier assignment, not more than five reassignments shall be made as the result of any one vacancy.
(4) After assigning qualified bidders, or if there are no others m the occupational group, the last resulting or remaining vacancy shall be filled in *37 accordance with instructions in 716.313, 716.2, 712, or 748.142.
* * * * *
748.2 Seniority Rules foe Post Office, Custodial, AND Vehicle Services
.21 Rules Common to These Theee Services
$ afc ‡ $
.212 Definitions
a. Service Seniority — That seniority based on total service in a particular installation and branch of the postal field service regardless of designation beginning with—
(1) Career appointment.
(2) Reassignment from another postal installation or branch of the Postal Service, unless the change action was ordered for service reasons.. See 748.214.
(3) Reinstatement or reemployment, unless a former postal employee retired on disability or resigned because of illness. See 712.341 and 748.2l7a(3).
(4) Transfer, or
(5) Date of appointment of lower eligible established under Public Law 577 (approved July 31,1946), amended by Public Law 492 (approved April 29', 1950), and Public Law 121 (approved July 16, 1953).
Service seniority continues to accrue so long as the service continues without interruption in the same branch of the Postal Service and in the same installation. For exception, see 748.211c.
$ $ ‡ $
d. Seniority for Preferred Assignment and Tours of Duty — This type of seniority determines the relative standing among regular employees entitled to bid for preferred assignments or tours of duty. In the vehicle service and custodial service, it is computed from entry into a career position in a particular designation. For post office employees, seniority is computed from the date of career appointment in a particular occupational group at the same installation (for examples, see 748.211c and 748.223b). In all branches of the service, it continues to accrue so long as service in the same occupational group and installation is uninterrupted. See 748.2121 for definition *38 of occupational group. For instructions on bidding for preferred assignments see 714.332c.
* # Hi * *
f. Tov/r of Duty — A shift of work regularly scheduled to be performed at a designated time and place.
*****
h. Preferred Assignment or Tour of Duty — An assignment preferred over his present assignment or tour of duty by any employee eligible to bid for such asment or tour when a vacancy exists. _
_ i. Bid — The written request to be assigned to a vacant tour or assignment, submitted by an employee entitled to bid.
* # ❖ # *
Since the day tour apparently is considered a preferred assignment, employees in the same level and in the same position are permitted to bid for the tours they desire as vacancies occur. If more employees bid than there are vacancies, employees with greater seniority are given preference in the assignment.
Mr. Robert K. Cristenberry, Acting Postmaster, New York Post Office, in an affidavit filed in this case, stated that there were mail handler vacancies on the day tour for the period beginning June 1, 1957. He listed the names of the mail handlers who were assigned to fill said vacancies and the dates of seniority, and concluded:
(3) Since Mr. Rubin’s date of seniority was August 17, 1952 (#1011), none of the Mail Handlers at Grand Central Station, assigned to Tour #2 from July 1,1957 to October 4, 1957, had less seniority priority.
It is clear that when plaintiff accepted his position, he accepted subject to the procedures which included the seniority system, and to permit plaintiff special preference would not only violate the procedures but in all probability disrupt the entire system. Unquestionably this would lead to the eventual destruction of the system and consequent lowering of employee morale. Moreover, to permit plaintiff, or any other employee, to remain away from work without leave and without warning would cause chaos in the Post Office Department and seriously impede the distribution and delivery of the mail.
*39 In conclusion, tbe regulations are clear — any request for sick leave in excess of three work days must be supported by a medical certificate. Plaintiff did not comply. Plaintiff was absent from duty without leave and refused to return to work.
The Post Office Department as well as plaintiff were bound by the seniority regulations, the validity of which is not questioned. Plaintiff had less seniority than those assigned to day work, and the Post Office officials had no other course than to separate plaintiff when he failed to report for duty.
Accordingly, there was nothing arbitrary or capricious or unreasonable in plaintiff’s removal, and all action taken was “for such cause as will promote the efficiency of the service,” pursuant to Veterans’ Preference Act, supra.
Defendant’s motion for summary judgment is granted and plaintiff’s cross-motion for summary judgment is denied. Plaintiff’s petition is dismissed.
It is so ordered.
DuReee, Judge; Maddest, Judge; Whitaker, Judge; and Jones, Chief Judge, concur.