This civilian pay case arises out of the termination during the probation period of a physician’s employment with the Veterans Administration. The plaintiff seeks reinstatement and back pay. The defendant has moved for dismissal or for summary judgment. We grant summary judgment on one count of the petition but otherwise deny the motion.
Plaintiff began employment on April 15,1973, as Chief of Laboratory Services at the Veterans Administration Hospital in Brockton, Massachusetts. Under 38 U.S.C. § 4106(b) (1976), such appointments are subject to a probationary period of 3 years. The statute also provides for periodic review by a Professional Standards Board and for separation from service if, during the probationary period, the board finds a physician "not fully qualified and satisfactory.”
Pursuant to the personnel regulations of the Veterans Administration set forth in paragraph 7.a(l), chapter 6, of its Manual, MP-5, part II, and in paragraph 6.05.b of the DM&S Supplement to the Manual, MP-5, part II, plaintiffs supervisor, the hospital’s Chief of Staff, prepared an annual proficiency report with respect to plaintiff dated April 15, 1974. The report gave plaintiff a marginally satisfactory rating and noted, "Desire for her retention is contingent upon a substantial improvement in her performance.” The parties disagree as to whether plaintiff was shown the report at that time. Plaintiff alleges that she never saw a copy of the report until it was disclosed under the Freedom of Information Act in August 1976.
On February 14, 1975, plaintiffs supervisor presented her with a document entitled "Items for Professional Standards Board Review Concerning DR. SUSANNA BAGINSKY, Chief, Laboratory Service.” The document contains 33 numbered paragraphs describing various incidents which in the supervisor’s belief demonstrated plaintiffs unsuitability for her position. Plaintiff was given an unsatisfactory rating in a new proficiency report dated February 20,1975, and a Professional Standards Board was convened on March 7, 1975. The board considered written and oral statements from various Veterans Administration *910 employees. Plaintiff submitted a written statement in her defense but did not appear personally. In accordance with the Manual, paragraph 4.06.C of the DM&S Supplement, plaintiff was not present while other witnesses were questioned. The board concluded in a report dated April 2, 1975, that plaintiffs performance was unsatisfactory. Plaintiffs employment was terminated on May 19, 1975.
Plaintiffs amended petition[1] for reinstatement and back pay has three counts. First, plaintiff contends that the Veterans Administration violated requirements in the Manual. Her principal complaint involves the alleged failure of her supervisor to counsel her or to show her the proficiency report dated April 15, 1974.[2] Second, plaintiff contends that she was denied due process in violation of the fifth amendment to the United States Constitution because the Professional Standards Board allegedly heard highly prejudicial and false charges never disclosed to plaintiff. Third, plaintiff maintains that there was no substantial or rational basis for her discharge.
With respect to the first count, defendant denies that plaintiff was not counseled or shown her proficiency report dated April 15, 1974. Defendant also contends that even if plaintiffs allegations were true, defendant is entitled to summary judgment as a matter of law. Defendant relies primarily on paragraph 4.05.b(3) of the DM&S Supplement, which provides:
The steps necessary to separate deficient employees shall be initiated at any time during the probationary period that the need for such action becomes manifest. This is true, regardless of past or pending proficiency ratings, counseling, or the result of any previous review which served to evaluate performance during the probationary period.
*911 Defendant interprets this provision as authorizing the termination of a probationary employee at any time whether or not the provisions governing counseling and disclosure of proficiency reports has been followed. We cannot agree with defendant’s interpretation of this provision. It permits a probationary employee with previously satisfactory ratings to be given a new and unsatisfactory rating at any time and dismissed without further counseling. Paragraph 6.05 of the DM&S Supplement, however, provided that before the end of an employee’s first year of employment "the rating official will discuss the content and conclusions of the report with the employee he has rated. Employees shall be permitted to view the approved proficiency report in the company of the rating official, approving official, or other professional-administrative supervisor having sufficient knowledge to discuss the rating with the employee.” If a marginal or unsatisfactory report was contemplated, the provision further required a counseling conference not later than 90 days prior to the due date of the annual report.
Thus, although a probationary employee may be dismissed within his first year without either counseling or other indication that his performance is deficient, after completing one year of employment he is entitled to a discussion of his performance. This is an important protection for the employee since it gives an opportunity to improve his work and avoid dismissal during the later part of the probationary period. We do not read paragraph 4.05.b(3) as modifying this provision or permitting the government to ignore it. If the plaintiff can sustain her allegations, the government has violated its regulation.
Allegations that the dismissal proceeding involved a violation of a regulation that was not apparent on the record of that proceeding would present an issue of material fact requiring a trial. Camero v. United States, 170 Ct. Cl. 490, 345 F.2d 798 (1965); see also Vitarelli v. Seaton, 359 U.S. 535 (1959); Service v. Dulles, 354 U.S. 363 (1957). This case is unusual in that the dismissal proceeding itself apparently was conducted in compliance with all applicable regulations, and the claim is that there were earlier violations of a regulation which tainted the dismissal. We conclude that there is a sufficient relation *912 ship between the alleged violations in this case and the dismissal to sustain plaintiffs cause of action. The Manual at paragraph 4 of chapter 6 indicates that the purposes of the proficiency rating system include providing a basis for informing employees of their expected performance and advising them of the calibre of their work. The system evidently is intended in part to provide employees with an opportunity to correct any deficiencies in their performance. The failure of plaintiff to correct her deficiencies directly led to her dismissal. Had she been properly counselled and shown her poor proficiency report (and we indicate no views here on that question), she might have been able to improve her performance and avoid dismissal.
A remand to the Trial Division is therefore necessary to determine whether plaintiff was shown her proficiency report dated April 15, 1974 at that time or given counselling as the Manual requires.
A remand is also necessary with respect to plaintiffs second count. Plaintiff alleges that the Professional Standards Board received evidence on false charges to which she had no opportunity to respond. At least one item that the board stated it considered — a petition of grievance signed by six subordinate employees against plaintiff — has not been submitted to the court in support of defendant’s motion for summary judgment. Plaintiff also alleges that she has been denied due process because disclosure of the false and unrebutted charges made to the board would seriously stigmatize plaintiff and diminish her employment opportunities. It would be inappropriate to decide this issue without further development of the facts, including all the information that was before the board.
Plaintiffs third count challenging the merits of the board’s action cannot stand. Plaintiff contends that the evidence against her was tainted by her supervisor’s "deep-seated and irrational animosity towards plaintiff,” and that the board’s action therefore lacked a rational basis. Plaintiff does not contend that any member of the board was biased or prejudiced against her, and the board heard statements adverse to plaintiff from several persons other than her supervisor. Where there is conflicting evidence, the board’s decision regarding the credibility of the persons appearing before it must be given great weight. See *913 Korman v. United States, 199 Ct. Cl. 78, 86-87, 462 F. 2d 1382, 1387 (1972). There is nothing inherently unbelievable about the evidence presented against plaintiff, and we cannot say that the board acted arbitrarily or capriciously in accepting the government’s rather than the plaintiffs version of the facts. Plaintiff is not entitled to a trial de novo on her dismissal. On remand the trial judge should limit the proceedings to matters necessary for the disposition of plaintiffs first and second counts.
Accordingly, it is. ordered that defendant’s motion for dismissal or summary judgment is denied with respect to Counts I and II, and its motion for summary judgment is granted with respect to Count III. The case is remanded to the Trial Division for further proceedings in accordance with this order.
Defendant’s motion for rehearing was denied February 1, 1980.

 Plaintiff has amended her petition to omit several named individuals as defendants and to omit a fourth count alleging unreasonable affliction of mental pain and suffering. Thus, defendant’s motion for summary judgment on these issues is moot.

 Plaintiff also contends that under paragraph 9.03.b(2)(a) of the DM&S Supplement to the Manual, a separation such as plaintiffs must be approved by the Chief Medical Director and not his deputy. This argument overlooks paragraph 4.e of chapter 4 of the Manual, which provides that a separation of a probationary employee recommended by a Professional Standards Board can be approved by the Chief Medical Officer or his designee. Defendant has submitted satisfactory undisputed evidence to show that the deputy of the Chief Medical Officer was properly designated to perform this task.