Civilian pay; dismissal; charges and reasons for dismissal; administrative findings; credibility of evidence; substantial evidence; scope of review of Court of Claims. — On May 23,1980 the court entered the following order:
Before Davis, Judge, Presiding, Kashiwa and Bennett, Judges.
In this civilian pay case plaintiff alleges that he was unlawfully discharged from his position as an appraiser with the Bureau of Indian Affairs in retaliation for his criticism of certain agency policies. Defendant has moved for summary judgment on the ground that the decision of the Civil Service Commission’s Federal Employee Appeals Authority (FEAA) upholding plaintiffs removal is without legal or factual defect and should be sustained.
The agency’s stated reason for removing Mr. Morris is given in its letter to plaintiff dated July 21,1978:
[Y]ou did verbally and physically attack your supervisor on June 13, 1978, which warrants your removal, such removal being in the public interest and a promotion of the efficiency of the service.
Thus the events of June 13, 1978 are of central importance to the resolution of the dispute before us. To fully understand those events, however, and to place plaintiffs arguments in their proper context, we must discuss facts which occurred well before the June 13 incident.
Prior to his removal, Mr. Morris served as a professional appraiser with the Bureau of Indian Affairs in Palm Springs, California. His job involved appraisals of land held *649 in trust by the United States for both individual Indians and Indian tribes. These appraisals served as the basis for sale or lease of such lands by the United States for the Indian owners. During the two year period prior to the June 13 incident there developed a deep disagreement between plaintiff and his immediate superior, Mr. Wendell Thomas, over the appropriate appraisal techniques to be used in valuing Indian land. Mr. Morris made a determined effort to explain his disagreement with the official policy in repeated correspondence with officials of the Bureau of Indian Affairs and the Interior Department. Plaintiff forcefully maintained that Indian land was being undervalued in derogation of the trust responsibility of the United States to the Indians. He argued that his superior, Mr. Thomas, lacked the background and professional expertise to understand the complex appraisal problems underlying the proper valuation of Indian land. Mr. Thomas, in turn, accused plaintiff of being an "advocate” for higher valuation rather than a disinterested appraiser.
In May 1978, Mr. Thomas issued a formal letter of reprimand to plaintiff charging him with insubordination. In response, Mr. Morris filed a grievance with the agency which basically accused his superior of lying in the reprimand. In the days immediately prior to the June 13 incident, Mr. Morris wrote memoranda to his superior threatening to take his complaints to parties outside the agency — Indian tribal leaders, the press, and national appraisal organizations. He also threatened litigation.
There were no witnesses to the June 13 incident other than Mr. Morris and Mr. Thomas. Both testified before the FEAA. Both agree that an incident took place early in the morning of June 13, 1978. They agree that Mr. Morris entered his superior’s office and confronted Mr. Thomas who was seated at his desk. Plaintiff admitted that he was somewhat agitated and that in the course of the argument cursed his superior. He testified that sometime during the conversation Mr. Thomas rose from his chair and that there was some incidental contact between them. Mr. Thomas testified that plaintiff slapped him, Mr. Morris flatly denied it. The first person on the scene other than the participants, a Mr. Dodson, testified that there was no physical sign of *650 any striking, but his testimony as to the relative position of the antagonists was consistent with Mr. Thomas’s recollection, but inconsistent with Mr. Morris’s version.
Six days after the incident, plaintiff was suspended, then removed from his position. He appealed to the FEAA. At the administrative hearing plaintiff testified on his own behalf. He also presented a number of character witnesses who testified that he was not a violent person, and that the alleged attack would be out of character for him. Plaintiffs attorney was permitted to present documentary and testimonial evidence, and to cross-examine agency witnesses concerning the dispute between Mr. Morris and Mr. Thomas. The FEAA concluded that the preponderance of the evidence supported the charge that plaintiff had struck his superior, and it therefore affirmed the agency action. This case followed.
Before both the FEAA and this court plaintiff has attempted to inject a Constitutional element into his claim. He seeks to characterize his situation as an unlawful removal of a "whistleblower” in retaliation for his exercise of his rights under the First Amendment. He argues that because of the presence of this First Amendment element, the FEAA erred in failing to apply the standards outlined in Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977), and related Supreme Court cases.
We reject plaintiffs characterization. We are not unmindful of the callous treatment that is often inflicted on those who dissent within the Government. Congress showed that it recognized this problem in establishing the Office of Special Counsel within the Merit Systems Protection Board in order to investigate complaints regarding unfair treatment of whistleblowers. Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111. Neither the protection of the Civil Service laws nor the First Amendment, however, extends to violence inflicted by an employee on his superior. Such conduct is not speech, symbolic or otherwise. On the contrary, it is proper cause for removal from federal employment. Ruffin v. United States, 144 Ct. Cl. 689, 691 (1959). Under Mt. Healthy, supra, the initial burden is on the plantiff to show "that his conduct was constitutionally *651 protected.” Id. at 287. Plaintiff has not met this burden. If there had been no June 13 incident, and the agency had removed plaintiff for simple inefficiency, then his First Amendment rights might well be involved and the Mt. Healthy standards properly invoked. This case, however, does not turn on a question of Constitutional law but on a question of fact — did plaintiff strike his superior? The fact that plaintiff may have been a "whistleblower” or that his relationship with Mr. Thomas was affected by Morris’ free-speech activities does not mean that the non-First Amendment charge of assaulting his superior had to be handled by any different general standards than if Mr. Morris had been a quiet mouse in his work.[1]
On the facts, plaintiff argues that the decision by the FEAA is not supported by substantial evidence and urges us to remand for trial as we did in Nibali v. United States, 210 Ct. Cl. 689 (1974) (Nibali I); see also Nibali v. United States, 218 Ct. Cl. 547, 589 F.2d 514 (1978) (Nibali II).[2] Mr. Nibali was a supervisory employee with the Internal Revenue Service who was removed for soliciting and accepting a bribe. He was indicted on these same charges, but, after two trials, was acquitted. He appealed his removal. He testified at the administrative hearing, but the two persons alleged to have paid the bribe, who were the main Government witnesses at the criminal trials, did not appear in person. Their testimony from the criminal proceedings was introduced as evidence before the Civil Service Commission which sustained the removal.
Nibali I came before the court on cross-motions for summary judgment. We remanded for trial because the decision hinged on a comparison of the credibility of the plaintiff and his two accusers, the finder of fact at the administrative level had no opportunity to observe the latter two and thus judge their credibility, and the jury verdicts in the criminal proceedings raised substantial doubts about the truth of the accusers’ allegations. After a *652 hearing by the trial judge, we held, in Nibali II, that plaintiffs removal was not supported by substantial evidence, and ordered his reinstatement.
In the present case, the decision also turns on the credibility of witnesses offering conflicting testimony, but there is a significant difference which militates against the remand proceeding adopted in Nibali I. Here both witnesses appeared before the finder of fact at the administrative hearing. Plaintiffs attorney had the opportunity to cross-examine Mr. Thomas, but was unable to elicit any significant variation in his version of the June 13 incident. We have examined the record and reviewed the testimony. This is a close case, and there are some reasons to doubt both witnesses. Mr. Morris believed passionately in his position, did not respect Mr. Thomas professionally, and felt that his superior was maligning him to agency officials. Mr. Thomas testified that plaintiffs criticism did not bother him personally, but that he merely considered it a nuisance since he had to take the time to respond to Mr. Morris’s numerous letters. An appraiser who had previously worked with both Mr. Thomas and Mr. Morris in the Palm Springs office testified, however, that Mr. Thomas had complained about plaintiff on many occasions, berated his work, called him unprofessional, and made unflattering personal remarks. Clearly, there was no love lost between these two gentlemen.
Were we sitting as a finder of fact, we might possibly decide differently than did the FEAA. That is not, however, our function. Our task is limited to deciding whether the administrative findings are supported by substantial evidence. We will not disturb an agency decision if supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); Schnakenberg v. United States, 219 Ct.Cl. 697 (1979). Here, the trier of fact was in the best position to judge credibility, and on the basis of a record which reflected all of plaintiffs contentions that trier believed Mr. Thomas. We will not overturn such a finding where, as here, there is substantial evidence to support it. See Schnakenberg, supra, Korman v. United States, 199 Ct. Cl. 78, 86-87, 462 F.2d 1382, 1387 (1972); cf. *653 Koppers Co. v. United States, 186 Ct. Cl. 142, 405 F.2d 554 (1968) (finding of Armed Services Board of Contract Appeals). Accordingly, plaintiffs petition must fail.
Therefore, it is ordered, upon consideration of the submissions of the parties, but without oral argument, that defendant’s motion for summary judgment is granted. The petition is dismissed.
Plaintiffs motion for relief from the foregoing order was denied July 10,1981.

 As we have noted, plaintiff was permitted to lay before the FEAA his contention that he was a "whistleblower”, that there were ample reasons for Mr. Thomas to prevaricate, and that Thomas had numerous personal reasons to desire plaintiffs removal. The FEAA specifically adverted to the presence of this evidence but obviously considered that it did not counterbalance the other evidence.

 Plaintiff does not assert any procedural errors.