No. 80–474.  PROCTER & GAMBLE MANUFACTURING CO. *v.* FISHER.  C. A. 5th Cir.  Certiorari denied.  THE CHIEF JUSTICE would grant certiorari.

JUSTICE REHNQUIST, dissenting.

The decision by the Court of Appeals for the Fifth Circuit in this case seriously undermines our recent decision in *Teamsters* v. *United States*, 431 U. S. 324 (1977), and accordingly I would grant certiorari.

Respondent, a black employee of petitioner, filed this Title VII action on July 15, 1974, alleging that petitioner discriminated against black employees in promotion decisions at its Dallas, Tex., plant.  Pursuant to the provisions of a collective-bargaining agreement, promotions at the plant are based on seniority when the ability and merit of competing employees are approximately equal.  For most jobs at the plant, ability and merit are determined by evaluating work performance, absentee record, disciplinary history, and medical condition.  Promotion to certain "critical" jobs is governed by the results of an evaluation system known as the

"total assessment process," involving examinations, interviews, and questionnaires. Employees bidding for promotion to one of the critical jobs are ranked, pursuant to this process, as "strong," "acceptable," "borderline," or "weak." The promotion is awarded to the most senior bidder receiving an "acceptable" rating.

In an opinion filed one month prior to our decision in *Teamsters,* the District Court concluded that petitioner's seniority system was not bona fide under § 703 (h) of Title VII, 42 U. S. C. § 2000e–2 (h),[1] and that petitioner had discriminated against respondent and the class he represented. In *Teamsters,* however, we held that an otherwise valid seniority system did not lose its bona fide character simply because its operation may perpetuate past discrimination. On appeal after *Teamsters,* the Court of Appeals acknowledged that the District Court had erred and that petitioner's seniority system was bona fide and legally valid under § 703 (h). 613 F. 2d 527, 542. The court nonetheless "saved" the District Court decision on the ground that it was based not only on the existence of a seniority system which perpetuated past acts of discrimination but also on a finding of active, current discrimination. The support for this finding consisted of statistical evidence demonstrating that black employees "are marked by their conspicuous presence in the 'lower echelons' of the employee hierarchy." *Id.,* at 543.

The difficulty with the lower court's reliance on this statistical evidence of disparate impact to support the ultimately required finding of discriminatory intent is that the court completely failed to consider the effect of the bona fide seniority system on the significance of the statistics. All of

---

[1] This provides, in pertinent part:

"[I]t shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority . . . system, . . . provided that such differences are not the result of an intention to discriminate because of race . . . ."

the nonmanagement employees with seniority dates predating July 1, 1966, are white. As of January 1, 1977, there were 239 white employees at the plant with more seniority than the most senior black employee. App. to Pet. for Cert. 40a. Thus, despite the highly successful efforts of petitioner to hire blacks [2] the normal operation of the seniority system for promotion results, at least for the present, in the statistical evidence of disparate impact relied upon by the Court of Appeals.

In *Teamsters* we stressed that "the unmistakable purpose of § 703 (h) was to make clear that the routine application of a bona fide seniority system would not be unlawful under Title VII . . . even where the employer's pre-Act discrimination resulted in whites having greater existing seniority rights than Negroes." 431 U. S., at 352. See also *California Brewers Assn.* v. *Bryant,* 444 U. S. 598, 600 (1980). Here, however, the Court of Appeals has premised a Title VII violation on just such a routine application. Surely little is left of *Teamsters* or indeed § 703 (h) if the results of the normal operation of a concededly bona fide seniority system may be used as proof of discrimination. In such a case the employer is found liable not for present racial discrimination but for complying with a seniority system. This is directly contrary to the intent of Congress, embodied in § 703 (h), and the opinion of this Court interpreting that provision in *Teamsters.*

Although statistical evidence of disparate impact in promotions may be a sign of intentional discrimination in some cases, it is not when the statistics are based on the operation of a bona fide seniority system or reflect other nondiscriminatory factors. This has been recognized by other courts employing a more sensitive approach to statistical evidence than that used by the court below. For example, in an opinion remanding a District Court decision for reconsideration in light of *Teamsters,* the Court of Appeals for the Sixth Circuit

---

[2] In 1966, 0.5% of petitioner's employees at the Dallas plant were black. As of 1977 this figure had risen to 14.7%, surpassing the percentage of blacks in the area's total work force (12.8%). App. to Pet. for Cert. 40a.

recognized that "[w]hile the plantiffs introduced into evidence . . . statistical exhibits . . . that indicated blacks were underrepresented in the better-paying jobs, . . . the statistical differences must be discounted to the extent they are simply a reflection of the impact of the bona fide seniority system . . . ." *Alexander* v. *Aero Lodge No. 735*, 565 F. 2d 1364, 1382 (1977), cert. denied, 436 U. S. 946 (1978). See also *Movement for Opportunity and Equality* v. *General Motors Corp.*, 622 F. 2d 1235, 1244–1245 (CA7 1980).

This Court has recognized that "[s]tatistical analyses have served and will continue to serve an important role as one indirect indicator of racial discrimination . . . ." *Mayor of Philadelphia* v. *Educational Equality League,* 415 U. S. 605, 620 (1974). The blind use of statistics, however, cannot be permitted to undermine the policies of Congress or erode our decisions on substantive law. Disraeli's familiar statement that "there are three kinds of lies: lies, damned lies and statistics," rings true in this case. Because of the growing importance of statistical evidence and the apparent misuse of it below, I would grant certiorari.