Darlene SHIDAKER,
Plaintiff-Appellant,

v.

Paul N. CARLIN, in his capacity as
Postmaster General (United
States Postal Service), Defendant-Appellee.

No. 84–2791.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1985.
Decided Jan. 29, 1986.

Stephen G. Seliger, Chicago, Ill., for plaintiff-appellant.

E. Roy Hawkens, Dept. of Justice, Civ. Div., Washington, D.C., for defendant-appellee.

Before CUMMINGS, Chief Judge, and BAUER and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

This is an appeal by Darlene Shidaker from an adverse judgment entered below in favor of Paul N. Carlin in his capacity as Postmaster General of the United States Postal Service. Shidaker, a postal employee, claims that the Postal Service denied her a promotion because she is a woman and then demoted her for challenging that

promotion denial as discriminatory. We reverse and remand for further consideration the district court's finding that Shidaker's promotion denial was not discriminatory. We affirm, however, the district court's finding that Shidaker's demotion was not retaliatory.

## I.

Shidaker was Acting Postmaster and then Postmaster of Kenilworth, Illinois from 1962 through 1982. In this position she was in pay scale category PES–18.

In 1977 Shidaker applied for vacant postmaster positions at Glenview, Palatine, and Franklin Park, Illinois. These positions were PES–22 positions. Ninety-two postal employees (the Postal Service follows a policy of promoting from within) applied for the vacant postmaster positions. Shidaker was the only female applicant. Shidaker was not promoted to any of the positions. The lower court found that two of the men who were promoted were better qualified than Shidaker and that the other promotee was as qualified as Shidaker.

In 1978 Shidaker filed an Equal Employment Opportunity ("EEO") complaint alleging that she was denied promotion to the PES–22 postmaster positions on the basis of sex. In 1980 an Equal Employment Opportunity Commission Complaint Examiner held a hearing on Shidaker's complaint. In September 1982 the Complaint Examiner issued a decision on the complaint finding that Shidaker was denied promotion on the basis of sex. In October 1982 the Postal Service's Regional Director for Employment and Labor Relations Central Region notified Shidaker that the Postal Service was rejecting the Examiner's decision.

On February 8, 1982 Shidaker received a "Proposed Notice of Reduction in Grade" from her immediate supervisor, Frank J. Santoro. Santoro's notice proposed that Shidaker be reduced from Postmaster, Kenilworth, PES–18, to distribution clerk, PES–5, because of alleged official misconduct. The notice informed Shidaker that she had the right under Postal Service regulations to answer the charges in the notice. The notice told her to direct her response to Santoro's superior, Richard Koenigs, District Manager of the Northern Illinois District, the official who would initially decide whether the demotion would occur.

Shidaker responded to Santoro's notice in two ways: she sent a letter to Koenigs answering the charges, and she filed a second EEO complaint. This complaint alleged that the proposed reduction in grade was in retaliation for her filing the first complaint challenging the promotion denial.

After Shidaker had answered Santoro's charges in her letter to Koenigs, Santoro wrote Koenigs a personal letter. In his letter Santoro responded to Shidaker's answers, alleged an additional ground for demoting Shidaker, and urged Koenigs to approve Shidaker's reduction in grade "for the good of the Service." Shidaker was unaware of this letter until after Koenigs approved her demotion.

Shidaker was eventually demoted to distribution clerk, PES–5. Shidaker filed an administrative appeal with the Postal Service from this reduction in grade and was accorded a full *de novo* hearing before a hearing officer appointed to examine the merits of her appeal. Shidaker was given a chance to respond to all charges and evidence including Santoro's letter to Koenigs. After the hearing, the Postal Service informed Shidaker by letter that the charges against her were supported by the evidence and that the demotion was warranted.

Shidaker sued the Postal Service in the United States District Court for the Northern District of Illinois, Eastern Division. Her complaint is in two counts. Count I alleges discriminatory failure to promote under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 and 39 U.S.C. § 409. Count II seeks review of Shidaker's administrative appeal of her demotion.

The district court made findings adverse to Shidaker on both counts and entered judgment accordingly. As regards Count

I, the district court found that Shidaker failed to establish a *prima facie* case of discriminatory impact. The court found that Shidaker did make a *prima facie* showing of disparate treatment, but also found that the Postal Service demonstrated legitimate nondiscriminatory reasons for not promoting Shidaker that were not pretextual. Shidaker's discrimination count was thus found to be without merit. As regards Count II, the district court found that there was substantial evidence to support the Postal Service's finding that Shidaker was demoted for misconduct and poor performance and not in retaliation for challenging her promotion denial. The court also found that the Postal Service's administrative review of Shidaker's appeal was in adequate compliance with its own procedural regulations. This appeal followed.

## II.

Shidaker makes two main arguments on appeal, one charging error in the trial court's treatment of her discrimination claim and the other charging error in its treatment of her retaliation claim. First, Shidaker argues that the district court erroneously found that she failed to make a *prima facie* showing of discriminatory impact. She argues that when an employer follows the policy of promoting from within (that is, fills high level positions with lower level employees rather than bringing in "laterals"), a plaintiff need only show statistical evidence of an imbalance between the percentage of a minority occupying high level positions and the percentage of that minority occupying lower level positions in order to make a *prima facie* case

1. The district court summarized Shidaker's statistical evidence as follows:

The statistics presented to the Court are as follows: In November, 1974, women held 20.8% of the positions in the Postal Service workforce. The percentage had moved to 23.5% by November, 1980. Nationally, women held 11.5% of the positions at PES 15 and above in January, 1980.

In 1978, the year of Shidaker's failed promotion, women occupied 23 of the 108 postmaster positions in the North Suburban MSC, or 21.1% of the total postmaster positions.

of discriminatory impact. Second, Shidaker claims that Santoro's letter to Koenigs was an *ex parte* communication that violated the Postal Service's regulatory procedures and denied Shidaker due process of law.

We agree with Shidaker that she made an adequate *prima facie* showing of discriminatory impact. We therefore reverse the district court's findings and judgment to the contrary, and remand Shidaker's discriminatory impact claim for further consideration. We affirm the district court's judgment in all other respects, however, including its finding that despite Santoro's letter to Koenigs the Postal Service adequately complied with its own procedural regulations when demoting Shidaker.

## A.

The district court incorrectly found that Shidaker failed to make a *prima facie* showing of discriminatory impact. Once Shidaker proved that the Postal Service promotes from within and introduced statistical evidence showing that there is a gross disparity between the percentage of women occupying lower level positions and upper level positions,[1] she made a sufficient *prima facie* showing of discriminatory impact. She need not, as the district court apparently thought, *Shidaker v. Bolger*, 593 F.Supp. 823, 835 (N.D.Ill.E.D. 1984), make a further showing of the percentage of female applicants for upper level positions or the percentage of lower level female employees qualified for upper level positions.

However, none of the women postmasters were rated higher than PES 20 and 15 of them were at level PES 15 or lower. Additionally in 1977–78 a total of 2,008 women were employed in the North Suburban MSC, 29.4% of the entire Postal Service workforce in the area. Despite that overall percentage, only four women or 5% were rated in positions of PES 19 or higher. Grossly, the disparities could be significant.

*Shidaker v. Bolger*, 593 F.Supp. 823, 835 (N.D.Ill. E.D.1984).

■ To make a *prima facie* showing of discriminatory impact Shidaker need only present evidence that the Postal Service's promotion practices, although facially neutral, select promotees "in a significantly discriminatory pattern". *Dothard v. Rawlinson*, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726–27, 53 L.Ed.2d 786 (1977); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). This evidence may be, and most often is, statistical in nature. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 584, 99 S.Ct. 1355, 1365, 59 L.Ed.2d 587 (1979); *Teamsters v. United States*, 431 U.S. 324, 339–40, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977). Only in very limited instances may a court find discriminatory impact from non-statistical evidence. *Dothard v. Rawlinson*, 433 U.S. 321, 330, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977); *Carpenter v. Board of Regents*, 728 F.2d 911, 914 (7th Cir.1984).

[3, 4] Gross disparity between the racial or gender composition of the relevant labor pool and the composition of the group occupying the positions in question can, by itself, make a *prima facie* case of disparate impact. *Mozee v. Jeffboat*, 746 F.2d 365, 372 (7th Cir.1984); *Clark v. Chrysler*, 673 F.2d 921, 927 (7th Cir.1982), *cert. denied*, 459 U.S. 873, 103 S.Ct. 161, 74 L.Ed.2d 134 (1982); *Movement for Opportunity and Equality v. General Motors*, 622 F.2d 1235, 1244–45 (7th Cir.1980); *See also, Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). Where a company is shown to promote from within, the relevant labor pool for upper level positions is the group of employees from which promotees will be drawn. *Hazelwood*, 433 U.S. at 308 n. 13, 97 S.Ct. 2742 n. 13; *Mozee v. Jeffboat*, 746 F.2d 365, 372 (7th Cir.1984); *Movement for Opportunity and Equality v. General Motors*, 622 F.2d 1235, 1258 (7th Cir.1980); *Paxton v. Union National Bank*, 688 F.2d 552, 563–64 (8th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); *Fisher v. Procter & Gamble Mfg.*, 613 F.2d 527, 544 (5th Cir.1980), *cert. denied*, 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981). Thus, where the plaintiff can show that the employer promotes from within, evidence of a gross disparity between the percentage of a minority in upper and lower level positions is sufficient to make a *prima facie* case of disparate impact. *Mozee v. Jeffboat*, 746 F.2d 365, 372 (7th Cir.1984); *Segar v. Smith*, 738 F.2d 1249, 1276–77 (D.C.Cir.1984), *cert. denied sub nom. Meese v. Segar*, —— U.S. ——, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *Fisher v. Procter & Gamble Mfg.*, 613 F.2d 527, 544 (5th Cir.1980).

■ Once a plaintiff makes a *prima facie* showing with statistics of this nature, the burden shifts to the defendant to rebut the inference of discrimination raised by these statistics. *Washington v. Davis*, 426 U.S. 229, 241, 96 S.Ct. 2040, 2048, 48 L.Ed.2d 597 (1976). Defendants may rebut a statistical *prima facie* showing of disparate impact with statistical evidence of their own that is "more refined, accurate and valid", *Movement for Opportunity and Equality v. General Motors*, 622 F.2d 1235, 1245 (7th Cir.1980); *Teamsters v. United States*, 431 U.S. 324, 339–40 and 360, 97 S.Ct. 1843, 1856, and 1867, 52 L.Ed.2d 396 (1977), or by showing that the challenged standards causing the discriminatory pattern are job related. *Washington v. Davis*, 426 U.S. 229, 246–47, 96 S.Ct. 2040, 2050–51, 48 L.Ed.2d 597 (1976); *Griggs v. Duke Power*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

Thus, it is not up to Shidaker to proffer evidence of lower level female employees' qualifications or evidence of the percentage of lower level female employees who applied for upper level positions. The burden is now on the Postal Service to bring forward evidence that few women occupying lower level positions have applied for upper level positions or are qualified for upper level positions, or to bring forward evidence of the job-relatedness of its promotion standards.

We must, therefore, remand Shidaker's discriminatory impact claim for further consideration by the district court. If the

Postal Service can come forward with evidence of a low percentage of female applicants for upper level jobs or evidence of the lack of qualifications of women in lower level positions, the Service might possibly rebut the inference of discrimination that arises from Shidaker's *prima facie* statistical showing. The Service might also be able to show the job-relatedness of its promotion standards. These determinations are best left in the discretion of the district court on remand, *Soria v. Ozinga Bros.*, 704 F.2d 990, 995 n. 6 (7th Cir.1983), and are not properly before us for review.

### B.

The district court correctly found that the demotion procedure was in adequate compliance with Postal Service regulations. We reject Shidaker's claim that Santoro's letter to Koenigs was an *ex parte* communication that "voided" the demotion decision.

Shidaker alleges that the demotion procedure violated Postal Service regulations and thereby denied her due process. Specifically, Shidaker claims that Santoro's personal letter to Koenigs, sent after Shidaker responded to Santoro's notice of reduction in grade, was in violation of § 661.5 of the Postal Service's Disciplinary, Grievance and Appeal Procedures. That section provides that employees are to have notice and a chance to respond to charges against them when they are the subject of a proposed adverse action. Shidaker claims that this section was violated by Santoro's letter because Santoro's letter alleged an additional ground for demoting Shidaker and Shidaker was unaware of that letter until after Koenigs made the decision to demote her. The Postal Service apparently concedes that § 661.5 was violated here, and we, therefore, assume that it was.

■ It is well-settled that an agency must abide by its own regulations when discharging or disciplining an employee. *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959); *Service v. Dulles*, 354 U.S. 363, 389, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957);

*Accardi v. Shaughnessy*, 347 U.S. 260, 268, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954). Every minor deviation from procedural guidelines, however, does not amount to a denial of procedural due process sufficient to vitiate the entire administrative proceeding. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council*, 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978); *County of Del Norte v. United States*, 732 F.2d 1462, 1467 (9th Cir.1984), *cert. denied sub nom. Assoc. of Cal. Water Agencies v. United States*, —— U.S. ——, 105 S.Ct. 958, 83 L.Ed.2d 964 (1985); *Boylan v. United States Postal Service*, 704 F.2d 573, 577 (11th Cir.1983), *cert. denied*, 466 U.S. 939, 104 S.Ct. 1916, 80 L.Ed.2d 464 (1984); *Doe v. Hampton*, 566 F.2d 265, 277 (D.C.Cir.1977). The question becomes one of determining the seriousness of the error by looking to possible prejudice resulting from such error. *Vermont Yankee Nuclear Power*, 435 U.S. at 558, 98 S.Ct. at 1219; *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *Dozier v. United States*, 473 F.2d 866, 868 (5th Cir. 1973); *Wathen v. United States*, 527 F.2d 1191, 1200 n. 9, 208 Ct.Cl. 342 (1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976).

■ If the procedure is found substantially defective because likely to prejudice the rights of individuals subjected to that procedure, the substantive merits of Shidaker's particular retaliation claim are irrelevant. *Greene v. United States*, 376 U.S. 149, 161–62, 84 S.Ct. 615, 622, 11 L.Ed.2d 576 (1964); *Sullivan v. Dept. of the Navy*, 720 F.2d 1266, 1273–74 (Fed.Cir. 1983); *Ryder v. United States*, 585 F.2d 482, 487–88, 218 Ct.Cl. 289 (1978). We are thus unconcerned with whether, absent the *ex parte* communication from Santoro to Koenigs, Koenigs would have reached the same decision to demote Shidaker. The test is not whether the procedural defect caused actual prejudice to the rights of the party before the court. *Greene v. United States*, 376 U.S. 149, 161–62, 84 S.Ct. 615, 622, 11 L.Ed.2d 576 (1964); *Simmons v.*

*United States,* 348 U.S. 397, 405–06, 75 S.Ct. 397, 401–02, 99 L.Ed. 453 (1955). The test is an objective one, whether the particular procedural defect is so substantial and so likely to cause prejudice that no claimant can fairly be required to be subjected to adverse action under such a flawed proceeding. *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *Vitarelli v. Seaton,* 359 U.S. 535, 540–46, 79 S.Ct. 968, 973–76, 3 L.Ed.d 1012 (1959); *Sangamon Valley Television v. United States,* 269 F.2d 221, 224 (D.C.Cir.1959).

■ Although we view this as a close case, we cannot say that the letter from Santoro to Koenigs was such a serious departure from Postal Service procedures that it vitiated the entire process. Even though this was an *ex parte* communication and in violation of Postal Service regulations, the defect was not so substantial that it would unfairly prejudice the rights of claimants reviewed under procedures having this defect.

Certainly other cases have found that certain *ex parte* communications from an adversary to a neutral administrative decision-maker in the context of an employee discharge or demotion were by themselves procedural defects substantial enough to vitiate the entire administrative proceeding. *Sullivan v. Department of the Navy,* 720 F.2d 1266 (Fed.Cir.1983); *Ryder v. United States,* 585 F.2d 482, 218 Ct.Cl. 289 (1978); *Camero v. United States,* 375 F.2d 777, 179 Ct.Cl. 520 (1967); *Sangamon Valley Television v. United States,* 269 F.2d 221 (D.C.Cir.1959). We cannot, however, conclude from these cases, as Shidaker argues, that every *ex parte* communication is sufficient by itself to undermine the integrity of an administrative proceeding. Many other cases have found *ex parte* communications in administrative proceedings to be harmless error. *Pinar v. Dole,* 747 F.2d 899, 906 (4th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *Chrysler Corp. v. Federal Trade Commission,* 561 F.2d 357, 362 (D.C.Cir.1977); *Doe v. Hampton,* 566 F.2d 265 (D.C.Cir.1977);

*Korman v. United States,* 462 F.2d 1382, 1388, 199 Ct.Cl. 78 (1972); *Salter v. United States,* 412 F.2d 874, 188 Ct.Cl. 524 (1969). Not every *ex parte* communication is a procedural defect so substantial and so likely to cause prejudice that it entitles the claimant to an entirely new administrative proceeding.

Several aspects of this *ex parte* communication convince us that it is not such a substantial procedural error that Shidaker or other claimants subjected to such a defective procedure are entitled to a new proceeding. First, the degree of departure from regulatory guidelines was minor. The regulations did not guarantee Shidaker that Santoro would not respond to her answer. They simply gave her the right to answer all charges and allegations made against her before the demotion decision would be made. Therefore, Santoro's letter violated Postal Service procedures only to the extent that it alleged an additional ground for demoting Shidaker. This it did in one sentence stating that "[Shidaker's] community relations also leave much to be desired as evidenced by correspondence previously submitted to you." Although the Postal Service apparently admits that this single sentence was in violation of regulations, we do not find that it amounts to the type of extended, substantial, and adversarial *ex parte* communication in blatant violation of known procedural guidelines that has been found fatally defective in other cases. *Sullivan v. Department of the Navy,* 720 F.2d 1266 (Fed.Cir.1983) (supervisor, angered by employee's filing of grievance against him, instigated investigation by FBI and Naval Investigative Service into employee's work habits, directed department head to recommend employee's removal on basis of evidence discovered in investigation, encouraged hearing officer by *ex parte* communication to recommend employee's removal, and encouraged reviewing officer by repeated *ex parte* phone calls to finalize employee's removal); *Ryder v. United States,* 585 F.2d 482, 218 Ct.Cl. 289 (1978) (supervisor, who had recommended employee for discharge on grounds of inefficiency, wrote a lengthy

signed *ex parte* statement to the officer who was reviewing the hearing examiner's findings, which statement the officer adopted *in toto*); *Camero v. United States*, 375 F.2d 777, 179 Ct.Cl. 520 (1967) (attorney, who represented agency at hearing reviewing agency's discharge of employee, engaged in on-going *ex parte* discussion of case with officials who reviewed that hearing committee's recommendation); *Brown v. United States*, 377 F.Supp. 530 (N.D.Tex.1974) (prosecutor for agency that discharged employee flew with hearing officer to hearing, discussed case with hearing officer on plane, stayed in hearing officer's hotel, and discussed case after hearing with hearing officer in car on way back to airport).

Second, the "additional ground" alleged in Santoro's letter was "additional" to the charges in the "Proposed Notice of Reduction in Grade" but was cumulative to other information that Koenigs had already reviewed in regard to Shidaker's performance. Santoro's letter itself reveals that Shidaker's poor community relations were "evidenced by correspondence previously submitted." We thus view Santoro's *ex parte* communication less harshly since there is less concern with claimants being unaware of evidence and charges against them when evidence is cumulative to that already before the decision-maker. *Doe v. Hampton*, 566 F.2d 265, 277 (D.C.Cir.1977) (harmless error where evidence, obtained in violation of regulations and to which claimant had no chance to respond, was cumulative); *Dozier v. United States*, 473 F.2d 866, 868 (5th Cir.1973) (same); *Salter v. United States*, 412 F.2d 874, 877–78, 188 Ct.Cl. 524 (1969) (*ex parte* communication harmless error where evidence submitted thereby is cumulative).

Third, the minor procedural error of Santoro's *ex parte* communication was mitigated by Shidaker's knowledge of it, and chance to respond to it, in the full *de novo* hearing at which Koenig's decision was reviewed. We certainly acknowledge that an *ex parte* communication can be so prejudicial that it cannot be "cured" by subsequent review. *Sullivan*, 720 F.2d at 1273;

*Ryder*, 585 F.2d at 486–87. Where the communication is already unlikely to do any harm, however, we are reluctant to require a reviewing agency that discovers a minor procedural error to reinstitute an entirely new proceeding rather than rectify that error by giving the employee full opportunity to respond to the new charges and evidence in the communication. Here, Shidaker knew of the existence and contents of Santoro's letter to Koenigs before the full *de novo* hearing reviewing her demotion. She had full opportunity to respond to the additional charge and present evidence to the contrary. Whatever damage might possibly have been done by the *ex parte* communication Shidaker had full opportunity to undo.

Finally, we are reluctant to apply a stringent procedural standard in this particular case since we are not firmly convinced that the regulations give Shidaker the right to have Koenigs act as a neutral decision-maker. Shidaker was certainly entitled to have Koenigs consider her response to charges against her. This, however, would be a sensible requirement for any agency concerned with demoting only those employees who deserve such adverse action. The regulations can thus be interpreted in two ways: as allowing Koenigs to act adversely to Shidaker in the interest of the Postal Service, or as giving Shidaker the right to have Koenigs act as a neutral decision-maker. Santoro clearly was not required to act neutrally towards Shidaker while the hearing examiner reviewing Koenigs' decision clearly was. The problem is that Koenigs' function lies somewhere in between these two roles of the Postal Service in the administrative review process. Although we do not rest our decision solely on this basis, Koenigs' uncertain role as neutral decision-maker makes us unwilling to apply the high standard of procedural protection designed for adjudicatory proceedings.

### III.

█ We find Shidaker's other bases for appeal to be completely without merit.

The district court's findings as to the promotees' qualifications were not undermined by the fact that documents underlying the promotion committee's decision are now unavailable, and there is sufficient evidence to find that Shidaker was demoted for misconduct and poor performance and not in retaliation for challenging her promotion denial as discriminatory.

The judgment of the district court finding that Shidaker failed to make a *prima facie* showing of discriminatory impact is reversed, and Shidaker's disparate impact claim is remanded for further consideration. On remand, Circuit Rule 18 will not apply. The district court's judgment in all other respects is affirmed.