**Darlene SHIDAKER,
Plaintiff–Appellant,**

v.

**Preston R. TISCH,[1] in his capacity as Postmaster General (United States Postal Service), Defendant–Appellee.**

**No. 84–2791.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1985.

Decided Jan. 29, 1986.

On Remand from the United States Supreme Court Nov. 16, 1987.

As Amended on Denial of Rehearing and Rehearing En Banc
Dec. 14, 1987.

---

1. Mr. Tisch has replaced Mr. Carlin as Postmaster General. We therefore substitute Mr. Tisch as the defendant-appellee pursuant to Rule 25(d)(1) of the FEDERAL RULES OF CIVIL PROCEDURE.

Stephen G. Seliger, Chicago, Ill., for plaintiff-appellant.

E. Roy Hawkens, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

BAUER, Chief Judge.

This is an appeal by Darlene Shidaker from an adverse judgment entered below in favor of Preston R. Tisch in his capacity as Postmaster General of the United States Postal Service. Shidaker, a postal employee, claims that the Postal Service denied her a promotion because she is a woman and then demoted her for challenging that promotion denial as discriminatory. In our original opinion, this panel reversed and remanded for further consideration the district court's finding that Shidaker's promotion denial was not discriminatory and we affirmed the district court's finding that Shidaker's demotion was not retaliatory. *Shidaker v. Carlin,* 782 F.2d 746 (7th Cir. 1985).

On April 6, 1987, the United States Supreme Court, — U.S. ——, 107 S.Ct. 1621, 95 L.Ed.2d 195 granted the Postal Service's petition for certiorari, vacated this court's judgment, and remanded the case for further consideration in light of *Johnson v. Transportation Agency of Santa Clara County,* 480 U.S. ——, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987). The only issue before this Court on remand is whether Shidaker's statistical evidence was sufficient to establish a *prima facie* case of disparate impact under Title VII of the Civil Rights Act of 1964.[2] After reviewing the Supreme

Court's decision in *Johnson,* we follow our original opinion and hold that Shidaker's statistical evidence was sufficient to establish a *prima facie* case of disparate impact under Title VII.

I.

We will briefly summarize the relevant facts discussed in our previous decision. Shidaker was Acting Postmaster and then Postmaster of Kenilworth, Illinois from 1962 through 1982. In this position she was in pay scale category PES–18. In 1977, Shidaker applied for vacant PES–22 postmaster positions at offices in Glenview, Palatine, and Franklin Park, Illinois. The Postal Service follows a policy of promoting from within and ninety-two postal employees applied for the three vacant postmaster positions. Shidaker, the only female applicant, was not promoted to any of the positions.

In 1978, Shidaker filed an Equal Employment Opportunity ("EEO") complaint alleging that she was denied promotion to the PES–22 postmaster positions on the basis of her sex. In 1980, an Equal Employment Opportunity Commission Complaint Examiner held a hearing on Shidaker's complaint. In September 1982, the Complaint Examiner issued a decision on the complaint finding that Shidaker was denied promotion on the basis of sex. In October 1982, the Postal Service's Regional Director for Employment and Labor Relations Central Region notified Shidaker that the Postal Service was rejecting the Examiner's decision.

Shidaker sued the Postal Service in the United States District Court for the Northern District of Illinois, Eastern Division. Count I of her complaint alleged discriminatory failure to promote under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 and 39 U.S.C. § 409. We consider this allegation on remand.

The district court found that Shidaker failed to establish a *prima facie* case of

---

2. We reinstate our earlier decision affirming the    district court in all other respects.

disparate impact. The court found that Shidaker did establish a *prima facie* showing of disparate treatment, but also found that the Postal Service demonstrated legitimate, nondiscriminatory, nonpretextual, reasons for not promoting Shidaker.

We agree with Shidaker that she made an adequate *prima facie* showing of disparate impact. We therefore reverse the district court and remand Shidaker's disparate impact claim for further consideration.

## II.

### A.

The Supreme Court's decision in *Johnson* arises out of facts and circumstances that differ from those involved in this case. *Johnson* was a reverse discrimination suit brought under Title VII by a white male who alleged that the promotion of an allegedly less qualified female pursuant to a voluntary affirmative action plan violated his rights under Title VII. In concluding that the affirmative action plan did not violate Title VII, the Supreme Court considered the degree to which statistical proof reflecting an underrepresentation of women in traditionally segregated jobs could justify an affirmative action plan. 107 S.Ct. at 1452. Specifically, the Supreme Court held that an employer need only show a "manifest imbalance" in order to adopt a voluntary affirmative action plan under Title VII. *Id.* The Court noted further that the "imbalance need not be such that it would support a *prima facie* case against the employer [under Title VII]." *Id.*[3]

The *Johnson* Court reiterated its earlier holding in *Hazelwood School District v.*

*United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), that in order to make out a *prima facie* case of discrimination under a disparate treatment "pattern and practice" theory, a plaintiff must compare the percentage of minorities or women in the employer's work force "with those in the labor force who possess the relevant qualifications." *Johnson*, 107 S.Ct. at 1452; *see also Johnson*, 107 S.Ct. at 1452–53 n. 10; *Steelworkers v. Weber*, 443 U.S. 193, 198–99, 99 S.Ct. 2721, 2724–25, 61 L.Ed.2d 480 (1979).[4]

### B.

*Johnson's* relevance to the instant case is limited. *Johnson* is not a disparate impact case and it does not break new ground in this area of Title VII jurisprudence. Rather, *Johnson* briefly reaffirms the Supreme Court's earlier holdings regarding the sufficiency and probative value of statistical proof under Title VII. The *Johnson* Court's discussion of *Hazelwood*, however, is pertinent. Although *Hazelwood* was a disparate treatment pattern and practice case, its holding regarding the sufficiency of statistical proof has been applied in large part to the disparate impact area of Title VII.

■ To make a *prima facie* showing of discriminatory impact, Shidaker need only present evidence that the Postal Service's promotional practices, although facially neutral, selects promotees "in a significantly discriminatory pattern". *Dothard v. Rawlinson*, 433 U.S. 321, 329, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). This evidence may be, and

**3.** Although the Court did not expressly say so, when it discussed the *prima facie* standard under Title VII, it was referring to the disparate treatment theory, not disparate impact theory because the plaintiff in *Johnson* was alleging intentional discrimination based on a sex-conscious affirmative action plan. 107 S.Ct. at 1449 (applying the disparate treatment order and allocation of proof requirements). *See also* 107 S.Ct. at 1463 (O'Connor, J., concurring in the

judgment) (discussing the *prima facie* standard in disparate treatment "pattern and practice" cases).

**4.** In order to establish a "manifest imbalance" sufficient to justify an affirmative action plan, the same comparison must be made, although the level of disparity may be less. *Johnson*, 107 S.Ct. at 1452 n. 10.

most often is, statistical in nature. *New York City Transit Authority v. Beazer*, 440 U.S. 568, 584, 99 S.Ct. 1355, 1365, 59 L.Ed.2d 587 (1979); *Teamsters v. United States*, 431 U.S. 324, 339–40, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 867 (7th Cir.1985). The statistical showing required to establish a *prima facie* case under the disparate impact theory may be less than the "gross disparity" required under "pattern and practice" disparate treatment cases. See *Hazelwood*, 433 U.S. at 307–08, 97 S.Ct. at 2741; *Teamsters*, 431 U.S. at 340 n. 20, 97 S.Ct. at 2744 n. 20 (holding that a "gross disparity" may establish a *prima facie* case in disparate treatment pattern and practice cases). As this Court held in *Clark v. Chrysler Corp.*, 673 F.2d 921, 926–27 (7th Cir.1982), "[i]n the use of statistical evidence to demonstrate the disparate impact of an allegedly discriminatory practice, the statistical disparity demonstrated must be 'significant' or 'substantial.'" (citations omitted). See also *Griffin v. Board of Regents of Regency University*, 795 F.2d 1281, 1287 (7th Cir.1986) (in disparate impact cases, "plaintiff must show that the policies and practices at issue have a substantially disproportionate impact...."); *Page v. U.S. Industries, Inc.*, 726 F.2d 1038, 1054 (5th Cir.1984) (disparate treatment requires showing of "gross disparity" although a "marked disproportion" suffices to prove disparate impact).[5]

■ In both the disparate treatment and impact contexts, *Hazelwood* teaches that statistical evidence is probative when it compares the percentage of minorities or women in the employer's work force with the percentage of minorities and women in the relevant labor market. 433 U.S. at 307–08, 97 S.Ct. at 2741. In instances where the job requires special training or skills, the relevant labor market consists of those persons who possess the relevant qualifications. *Johnson*, 107 S.Ct. at 1452; *Hazelwood*, 433 U.S. at 308 n. 13, 97 S.Ct. at 2742 n. 13; *Regner v. City of Chicago*,

789 F.2d 534, 537–38 (7th Cir.1986). Where a company is shown to promote from within, the relevant labor pool of qualified applicants for upper level positions may be the group of employees in the company from which promotees will be drawn. See *Hazelwood*, 433 U.S. at 308 n. 13, 97 S.Ct. at 2742 n. 13; *Paxton v. Union National Bank*, 688 F.2d 552, 564 (8th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); *Fisher v. Procter & Gamble Mfg.*, 613 F.2d 527, 544 (5th Cir. 1980), *cert. denied*, 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981). Thus, where the plaintiff can show that the employer promotes from within, evidence of a gross disparity between the percentages of minorities in upper and lower level positions is sufficient to establish a *prima facie* case of discrimination under both disparate treatment or disparate impact theories. *Regner*, 789 F.2d at 538 (disparate impact promotion case); *Segar v. Smith*, 738 F.2d 1249, 1276–77 (D.C.Cir.1984), *cert. denied sub nom. Meese v. Segar*, 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985) (disparate impact promotion case); *O'Brien v. Sky Chefs, Inc.*, 670 F.2d 864, 865–67 (9th Cir.1982) (disparate treatment promotion case); *Fisher*, 613 F.2d at 544 (disparate impact promotion case); *see also Mozee v. Jeffboat*, 746 F.2d 365, 372 (7th Cir.1984); *Paxton*, 688 F.2d at 556–57 n. 3.

## C.

Both Shidaker and the Postal Service agree that under *Hazelwood* and *Johnson*, Shidaker must compare the percentage of women in high level postmaster positions with the percentage of women in the qualified labor pool. They differ, however, in the application of this standard to this case. Shidaker argues that the statistics offered to the district court reflect a gross disparity between the number of women occupying low level postmaster positions as compared to the small number of women serving in the higher level postmaster grades. Shidaker argues further that because the postal service promotes from within, the

---

**5.** We need not define the precise extent to which the *prima facie* standard differs in disparate treatment and disparate impact cases because, as we noted *infra* at 8, the district court found a gross disparity presented by Shidaker's statistics.

relevant qualified labor group for comparison purposes is the lower level postmasters from which the promotees to the high level position are drawn. The Postal Service counters, and the district court held, *Shidaker v. Bolger*, 593 F.Supp. 823, 835 (N.D. Ill.E.D.1984), that these statistics alone are insufficient to establish a *prima facie* case. Rather, the district court required statistical evidence relating to applicant flow (*e.g.* how many women have applied for certain positions in the past, how many women were eligible for past vacancies).

■ The district court incorrectly found that Shidaker failed to make a *prima facie* showing of disparate impact. Once Shidaker proved that the Postal Service promotes from within and introduced statistical evidence showing a gross disparity between the percentage of women in lower level postmaster positions and those in upper level postmaster positions, she made a sufficient *prima facie* showing of disparate impact. She need not, as the district court apparently thought, make a further statistical showing regarding applicant flow.

### D.

The district court found that the Postal Service had a policy of promoting from within.[6] *Shidaker*, 593 F.Supp. at 827. Al-

though the district court did not find expressly that any skills were required for these higher level postmaster positions, it did find that a Screening Board first evaluated applicants to eliminate those who did not possess the minimal qualifications. *Id.* at 828. Shidaker was found qualified for all three jobs by the Screening Board. The only factor which seemed to distinguish the rankings of those deemed qualified was their past experience, not any particular skills.[7] Thus, the relevant labor pool for statistical comparison was the lower level postmasters, most of whom, if not all, possessed the requisite qualifications and skills for promotion.

The district court also found a gross disparity between the percentage of women occupying low level postmaster positions (21.1%) and those occupying the higher level positions (5%).[8] *Id.* at 829–30. Specifically, the district court found that none of the women postmasters was rated higher than PES–20.[9]

■ Once a plaintiff makes a *prima facie* showing with statistics of this nature, the burden shifts to the defendant to rebut the inference of discrimination raised by these statistics. *Washington v. Davis*, 426 U.S. 229, 241, 96 S.Ct. 2040, 2048, 48 L.Ed. 2d 597 (1976). Defendants may rebut a

6. Two of the three men selected for the positions to which Shidaker applied were postmasters. One of these was a PES–18, the same level as Shidaker. The third applicant was a Manager of Mail Processing, a PES–21 position.

7. In response to one of Shidaker's interrogatories sent to the Postal Service after this court's prior remand regarding the qualifications for the higher level postmaster positions, the Postal Service stated:

> Assuming that plaintiff means to inquire whether women at the North Suburban MSC at the time plaintiff applied for the position of postmaster were less qualified than men for positions at levels 16 and above, defendant does not so contend except in one respect. In the years before 1977, men tended to be found in proportionately greater numbers in supervisory and managerial positions than women. As a result, they would gain the experience necessary for advancement to higher-level positions in proportionately greater numbers than women.

Ans. to Interrogatory No. 3.

8. The district court summarized Shidaker's statistical evidence as follows:

> The statistics presented to the Court are as follows: In November, 1974, women held 20.8% of the positions in the Postal Service workforce. The percentage had moved to 23.5% by November, 1980. Nationally, women held 11.5% of the positions at PES 15 and above in January, 1980.
>
> In 1978, the year of Shidaker's failed promotion, women occupied 23 of the 108 postmaster positions in the North Suburban MSC, or 21.1% of the total postmaster positions. However, none of the women postmasters were rated higher than PES 20 and 15 of them were at level PES 15 or lower. Additionally in 1977–78 a total of 2,008 women were employed in the North Suburban MSC, 29.4% of the entire Postal Service workforce in the area. Despite that overall percentage, only four women or 5% were rated in positions of PES 19 or higher. *Grossly, the disparities could be significant.*

*Shidaker v. Bolger*, 593 F.Supp. 823, 835 (N.D.Ill. E.D.1984) (emphasis added).

9. *Cf. Johnson*, 107 S.Ct. at 1465 (O'Connor, J., concurring in judgment).

statistical *prima facie* showing of disparate impact with statistical evidence of their own that is "more refined, accurate and valid", *Movement for Opportunity and Equality v. General Motors,* 622 F.2d 1235, 1245 (7th Cir.1980); *Teamsters v. United States,* 431 U.S. 324, 339–40 and 360, 97 S.Ct. 1843, 1856, 1867, 52 L.Ed.2d 396 (1977), or by showing that the challenged standards causing the discriminatory pattern are job related. *Washington v. Davis,* 426 U.S. 229, 246–47, 96 S.Ct. 2040, 2050–51, 48 L.Ed.2d 597 (1976); *Griggs v. Duke Power,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

Thus, it is not up to Shidaker at this point to proffer evidence of lower level female postmaster employees qualifications or of the percentage of lower level female employees who applied for upper level positions. Although evidence of applicant flow may be relevant and probative, *Hazelwood,* 433 U.S. at 308 n. 13, 97 S.Ct. at 2742 n. 13, Shidaker is not required to present such evidence because she has established that a gross disparity exists between the percentage of women in the low level postmaster positions as compared to those in the higher level postmaster positions. We therefore remand Shidaker's disparate impact claim for further consideration by the district court. As we stated in our earlier opinion:

> [i]f [on remand] the Postal Service can come forward with evidence of a low percentage of female applicants for upper level jobs or evidence of the lack of qualifications of women in lower level positions, the Service might possibly rebut the inference of discrimination that arises from Shidaker's *prima facie* statistical showing. The Service might also be able to show the job-relatedness of its promotion standards. These determinations are best left in the discretion of the district court on remand, *Soria v. Ozinga Bros.,* 704 F.2d 990, 995 n. 6 (7th Cir. 1983), and are not properly before us for review.

782 F.2d at 751.

### III.

Despite characterizations by the Postal Service, this is not a case in which the plaintiff seeks to apply a lower standard for proving a *prima facie* case. Here, Shidaker has done more than demonstrate an "imbalance" between minority representation in the higher and lower levels of the Postal Service's work force. Shidaker has proffered evidence which the district court found demonstrates a gross disparity between representation of women in the low level postmaster positions and the upper level postmaster positions. Because the lower level postmasters comprise the general pool from which high level postmasters are chosen, these statistics establish a *prima facie* case of disparate impact.

The judgment of the district court finding that Shidaker failed to make a *prima facie* showing of disparate impact is reversed, and Shidaker's disparate impact claim is remanded for further consideration. On remand, Circuit Rule 36 will not apply. The district court's judgment in all other respects is affirmed.